## 12276

### THOMPSON v. PACIFIC MILLS *ET AL.*

#### (139 S. E., 619)

1. PARTIES—MOTION TO ELIMINATE DEFENDANT, MADE ON CALL OF CASE, HELD PROPERLY DENIED (CODE, CIV. PROC., 1922, § 405).—Motion to eliminate a defendant, made upon the call of the case, *held* properly disallowed, under Code Civ. Proc., 1922, § 405, requiring at least 5 days' notice in writing to opposite party of grounds of such objection.

2. INSURANCE—BENEFICIARY UNDER GROUP POLICY CANNOT BE ARBITRARILY DEPRIVED OF BENEFITS OF POLICY BY CANCELLATION WITHOUT NOTICE.—Holder of beneficiary certificate under group policy covering employees cannot be arbitrarily deprived of benefits of policy by a cancellation of which he had received no notice, and to which neither he nor insured had become a party.

3. INSURANCE—BETTERMENT OF EMPLOYMENT CONDITIONS CONSTITUTES SUFFICIENT CONSIDERATION TO SUSTAIN RIGHT OF ACTION BY BENEFICIARY OF INSURED EMPLOYEE UNDER GROUP POLICY.—Betterment of employment conditions that is featured as an industrial advantage arising out of carrying group policies covering employees constitutes a sufficient consideration to sustain right of action by beneficiary of insured employee.

4. INSURANCE—EMPLOYEE CARRIED ON PAY ROLL, THOUGH NOT ACTUALLY EMPLOYED AT TIME OF DEATH, HELD WITHIN GROUP POLICY.—Group policy covering employees *held* to cover employee carried on the pay roll, though not actually employed at time of his death.

5. INSURANCE—RIGHT OF BENEFICIARY UNDER GROUP POLICY ENDED AFTER EXPIRATION OF ONE MONTH TEMPORARY CONTINUANCE AFTER

DATE FOR PAYMENT OF ANNUAL PREMIUM.—Where group policy covering employees was, at time for payment of annual premium, continued in force by employer for period of one month, with no further payments of premium, policy, at the end of such period, became automatically canceled and all rights of beneficiary under policy, as originally issued, definitely and completely ended, in view of terms of policy placing no restriction on original contracting parties from entering into any contract for insurance of employees.

6. MASTER AND SERVANT—NEITHER EMPLOYER'S SURRENDER OF GROUP POLICY NOR FAILURE TO GIVE NOTICE OPERATED TO MAKE ORIGINAL BENEFICIARY SUCH UNDER PROVISIONS OF NEW PLAN.—Where employer carrying group insurance on employees adopted a new plan and surrendered the original group policy, neither the surrender of such policy nor failure to give notice that it had been allowed to lapse would reinstate original insurance nor make original beneficiary a beneficiary against the express provisions of new plan of insurance adopted; there being no obligation on part of employer to keep up policy beyond date of its surrender.

7. MASTER AND SERVANT—EMPLOYER'S FAILURE TO NOTIFY BENEFICIARY OF CANCELLING GROUP POLICY DID NOT CREATE LIABILITY ON THEORY THAT BY PAYING PREMIUMS BENEFICIARY MIGHT TAKE ADVANTAGE OF PROVISIONS.—Employer's failure to notify beneficiary and insured of cancellation of group insurance held not to create right in favor of beneficiary on theory that he might have taken advantage of certain provisions of policy by his own payment of premium, since, under conditions of certificate issued under such group policy, employee covered thereby could obtain individual policy only on termination of employment for any reason.

8. MASTER AND SERVANT—ORIGINAL BENEFICIARY UNDER GROUP POLICY ON EMPLOYEES HELD NOT ENTITLED TO RECOVER AFTER CANCELLATION ON THEORY NEW PLAN REPLACED ORIGINAL POLICY.—Where employer, carrying group insurance on employees, adopted a new plan of insurance and canceled group policy, the new plan of insurance would not take over and replace original group policy so as to permit recovery by original beneficiary on death of employee, in view of distinct differences between original group policy and plan of death benefits as substituted.

Before WHALEY, J., County Court, Richland, October, 1925. Affirmed in part and reversed in part.

Action by R. O. Thompson against the Pacific Mills and Ætna Life Insurance Company. From a judgment against defendant last named, and in favor of defendant first named, plaintiff and defendant last named appeal.

*Messrs. Hunter A. Gibbes* and *G. M. Beam,* for R. O. Thompson, cite: *Policy violated:* 114 S. C., 202; Id., 306. *Provision for cancellation in insurance policy must be strictly followed:* 37 L. R. A., 131; 113 S. C., 492. *Agent to procure insurance not agent of insured for purpose of cancelling policy:* 10 L. R. A., 144. *Whole premium earned on default in payment of an installment due:* 6 L. R. A., 87. *Condition in policy to the effect that it shall be void if premiums not paid when due means that it shall be voidable at option of the company:* 222 U. S., 149. *Policy constitutes a contract, provisions of which are binding unless waived or annulled for lawful reasons:* 131 S. C., 500; 77 S. C., 299.

*Messrs. Moorman & Moorman,* for Ætna Life Insurance Company, cite: *Plaintiff had no vested interest in policy:* 2 Joyce on Ins., Sec. 731; 114 S. C., 405; 100 S. C., 517; 131 S. E., 774. *Matter not relied on as ground for demurrer not considered on appeal:* 120 S. C., 354.

*Messrs. Elliott & McLain,* for Pacific Mills, cite: *Courts liberal in giving company an option as to whom it will make payment of the benefits:* 31 C. J., 966.

September 23, 1927.

The opinion of the Court was delivered by Mr. Acting Justice R. E. Whiting.

This action, in which the defendants filed a joint answer, was tried in the Richland county Court. The presiding Judge of that Court directed a verdict against the defendant Ætna Life Insurance Company and a verdict for the defendant Pacific Mills. From the judgment entered under this direction of verdict, both plaintiff and the insurance company have appealed; the two appeals being printed and heard together. For the purpose of the "Case for Appeal," a statement of facts was agreed upon and adopted by all attorneys engaged in the cause, as follows:

"The action is by an alleged beneficiary designated in a group life insurance policy on the lives of more than 10,000 employees of Pacific Mills, one of the defendants herein, carried with the Ætna Life Insurance Company, the other defendant. The policy was originally written September 27, 1920, and the premiums were paid by Pacific Mills, and not by any employees. Certificates were issued to the employees by Ætna Life Insurance Company and Pacific Mills setting out certain terms, in which certificate it is specifically stated that the taking out of said policy did not establish a precedent to continue the insurance. When the annual premium came due, on September 27, 1924, the Pacific Mills did not pay same, but by its own terms the policy continued in force for 31 days thereafter. After the expiration and discontinuance of said policy J. J. Thompson, who had been an employee of Pacific Mills, died in December, 1924. The plaintiff, R. O. Thompson, claims that he was the beneficiary under the said policy. The complaint alleges that Pacific Mills assumed on October 27, 1924, all liability of the Ætna Life Insurance Company under the aforesaid policy, and that the Pacific Mills were liable to this plaintiff because he was the only designated beneficiary of said J. J. Thompson. Pacific Mills paid funeral expenses and debts of said J. J. Thompson, and all of the balance of $1,500, except $40.72, Pacific Mills paid to three dependent daughters of said J. J. Thompson under their 'new plan of insurance,' upon the ground that J. J. Thompson had not designated any beneficiary under the 'new plan of insurance,' and that this left the right to Pacific Mills to pay to such person or persons as Pacific Mills 'may deem proper.' The $40.72 balance is held to be applied to the payment of any debts of J. J. Thompson. Said J. J. Thompson paid no part of any premiums for any of this insurance and was not actually employed by Pacific Mills at the time of his death."

At the call of the case for trial, a motion was made by defendant that the Ætna Life Insurance Company be elim-

inated. The trial Judge refused the motion and also a motion for nonsuit made in behalf of the insurance company at the close of plaintiff's testimony. Both plaintiff and defendants made motions for direction of verdict. The reason assigned by the trial Judge for his ruling on these motions was that the group policy of insurance as issued by the Ætna Life Insurance Company was taken out for the term of one year, renewal from year to year, at option, by paying the yearly premium; and that, the policy having been extended beyond the end of the year terminating September 27, 1924, the agreement would be implied that it would remain in full force and effect for the full period of another year, and could not be canceled within such period except upon the consent of the holders of beneficiary certificates.

## THE INSURANCE COMPANY'S APPEAL

The rulings made by the trial Judge on the various motions above referred to are questioned by eleven exceptions taken by defendant Ætna Life Insurance Company. The first exception assigns error in not granting the motion to eliminate the insurance company from the case; the second exception error in not granting the motion for a nonsuit; the remaining nine exceptions, error in the ruling directing a verdict. The same point is, in substance, involved in all exceptions; namely, whether the beneficiary certificate, which was issued to plaintiff in connection with the group policy taken out by Pacific Mills, remained an obligation against the insurance company after the group policy was surrendered by Pacific Mills for cancellation.

1. The first exception contains its own answer. It is stated that the motion to eliminate the defendant from the case was practically a demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action against the insurance company. The motion was made upon the call of the case, and there is no showing of notice. Section 405, Code of Civil Pro-

cedure 1922, contains the proviso, that the party making an exception of this nature "shall give *at least* five days' notice in writing, to the opposite party of the grounds of such objection." Even if it should be considered that notice was waived by argument of the motion, the same difficulty arises with respect to sustaining this motion that is pointed out in our consideration of the ruling refusing a nonsuit.

As to the second exception, which is taken to the refusal to grant a nonsuit, we think that the trial Judge was amply justified in withholding decision on the motion and proceeding with the trial. The betterment of employment conditions that is featured as an industrial advantage arising out of carrying policies of this kind is unquestionably a sufficient consideration to sustain the right of action by the beneficiary of the insured employee. The letter sent to plaintiff by Pacific Mills, of date January 2, 1926, refers to the *cancellation,* on October 27, 1924, of the group policy carried by the company with the Ætna Life Insurance Company. It was very properly held by the trial Judge that, at this stage of the case, the testimony was susceptible to the inference that, pursuant to the optional provision for renewal contained in the original policy, the said policy had been renewed on September 27, 1924, for an additional period of 1 year, thereby giving rights under the policy to J. J. Thompson, the insured employee. The plaintiff had been named as his beneficiary in the certificate of insurance issued under the policy; and, in the absence of a change of beneficiary we could not say that in such case the holder of the beneficiary certificate could be arbitrarily deprived of the benefits of the policy by a cancellation of which he had received no notice, and to which neither he nor the insured had become a party.

2. Another ground or argument on the motion for nonsuit, also raised under the seventh exception in respect to the motion for a directed verdict, is based on the theory that the group policy covered only actual em-

ployees; and that J. J. Thompson, the insured, not being at the time of his death in the active employment of Pacific Mills within the meaning and terms of the policy, he was not covered by the policy, if it was in force.

This position cannot be sustained. The letter of January 2, 1926, identified by plaintiff and introduced in evidence as having been received by him from Pacific Mills, was signed by S. W. Mims, employment manager. This letter is, in itself, a complete recognition of the rights of J. J. Thompson, as an employee, to the benefit of the company's insurance. The sole ground of refusal to recognize plaintiff's claim was the change of the company's insurance plan, which "automatically canceled the beneficiary" under the ·Ætna policy. In further explanation of the effect of the change made by the adoption of the new policy, the letter stated:

"The Pacific Mills reserved the right to pay the insurance to any one in your family whom they saw fit."

As a witness for defendant, Mr. Mims also testified as follows:

"Q. J. J. Thompson was in the employ of the mill when the new plan went into effect, I believe? A. Yes; but he was not working in the mill. He had been sick for quite a while. He was still in the village.

"Q. He was on the pay roll? A. Yes, sir."

If the group policy issued by the Ætna Company should be given the highly technical construction desired to be placed on it by the argument of this appeal, then it has become "as sounding brass or a tinkling cymbal." Certainly, it would be almost valueless from the standpoint of any real protection to the dependents of the employee. Where death occurs to the employee of good standing, who has been incapacitated through sickness or disease for weeks, or perhaps even months prior to his death, the need of his family for the aid of the "death benefit" is not less than where the employee has met a sudden, accidental, or violent death in the performance of the normal activities of his employment.

Thompson, while for some months incapacitated for active work, had neither been discharged, nor had he left the service of the Pacific Mills, and, as was stated by the employment manager, he was still carried on the pay rolls of the company. That he was regarded and treated as an employee, entitled to every right and benefit that he would have had in active service, is further evidenced by the voluntary payments made by the Pacific Mills, on account of his death, out of its own death benefit fund.

The point is, no doubt, raised because the claim here presented is though, unjustified, but, as has been repeatedly pointed out in former decisions, technical defenses of this character, which rely upon adroitly drawn provisions that are skillfully used in limitation of liability, to not commend themselves to the mind of this Court. Nor do we think that we would be doing justice to the insurance company itself, in the matter of these group policies of life insurance, to place such policies on a basis substantially equivalent to mere accident insurance for the purpose of evading whatever rightful obligation may be found to rest upon the company in respect to the matter of this claim.

3. Another question of entirely different character is raised by the motions for direction of verdict which were made at the close of defendant's testimony. As to the effect of the testimony upon which these motions were based, it is conceded in the agreed statement of facts appearing at the commencement of the "Case for Appeal":

*"When the annual premium came due, on September 27, 1924, the Pacific Mills did not pay same, but by its own terms the policy continued in force for 31 days thereafter."*

Supporting this admission of fact which appears in the record, we also find the testimony of Mr. W. P. Hamrick, general superintendent of Pacific Mills; this being given in response to the question why the Ætna policy was carried for a month beyond its annual date to cover the period from September 27, 1924, to October 27, 1924. The reply of

Mr. Hamrick (properly allowed against the objection of plaintiff) was given as follows:

"A. Because the company did not decide until so near the 27th to cancel the insurance, that they didn't have time to make the necessary arrangements, and they made special arrangements with the insurance company to carry it one month, from September 27th to October 27th, in order to get all the arrangements made and get out new premiums for the new insurance.

"Q. Has any other premium been paid on the policy except the premium that carried it for that one month? A. No, sir."

The original Ætna Life Insurance Company policy taken out by Pacific Mills on September 27, 1920, covering insurance to the amount of $10,916,000, with a first annual premium of $115,145.72, contained, among other provisions, the following:

"This policy issued for the term of 1 year from the 27th day of September, 1920, in consideration of the application of the employer, which application is hereby made a part of this contract and a copy of which is attached thereto, and in further consideration of the payment of an annual premium of $115,145.72, subject to adjustment for changes in the personnel of the group insured, as hereinafter provided.

"This policy is issued and accepted subject to all the conditions, benefits, and privileges described on the subsequent pages hereof which are hereby made a part of this contract.

"Group policy. *One-year term.* Renewable. Nonparticipating. *Premiums payable annually.* * * *

"This policy may at the end of the first and each subsequent premium paying period be continued, at the option of the employer, *by paying in advance* to the company at its home office, or to its agent, the premium for the insuring age then attained by each and all insured calculated according to the amount of insurance to be continued and the table of premium rates contained herein. * * *

"A grace of 31 days, during which the contract will remain in full force, will be allowed in the payment of all premiums except the first."

Pertinent provisions contained in the individual certificates of insurance, issued in connection with the group policy to employees of the Pacific Mills, appear as follows:

"Pacific Mills has made this arrangement for insurance in order to afford a certain amount of protection in the event of the death of its employees, or permanent total disability occurring before age of sixty. In case you die, at any time or place, from any cause whatsoever, while you are in the employ of this company, *during the continuance of the policy,* the amount of insurance then in force upon your life will be paid in accordance with the provision made on the face of this certificate. * * *

"While we have every reason to believe that we will continue this insurance, the fact that we have taken it out does not establish a *precedent* for all time."

It is apparent from the above-quoted provision that it was not intended, either by the Ætna Company or by the Pacific Mills, that this group insurance policy should ever carry any rights to employees of Pacific Mills insured thereunder beyond the one-year term specified in the policy. The term thus provided for became renewable *at the option* of the employer, Pacific Mills, *without incurring any obligation* in respect to such renewal; it being expressly stated in the insurance certificates issued to the employees that the fact that the policy had been taken out did not establish a precedent. So far as the obligation of the insurance company was concerned, it may also be noted that the right of renewal by Pacific Mills for any additional period whatsoever would become effective only *by paying in advance* the premium required for the continuance of the policy.

It is conceded in the argument for plaintiff, who for the purpose of the insurance company's appeal is the respondent herein, that in order to renew the policy "the employer,

Pacific Mills, was under obligation to do its part, to wit, pay the premium in advance." It is also conceded:

"Upon failure to pay *all the premium* within the period of grace, the insurance company had the right to cancel the group insurance as a whole. In fact, failure to pay *automatically* canceled the insurance without notice." (Italics ours.)

This conclusion results of necessity from the provisions of the policy; but it is equally clear from the same provision that when it is thus automatically canceled by failure to pay the premium for the optional renewal term, all rights under the policy as originally issued must be deemed definitely and completely ended. There is no restriction in the terms of the policy that can operate to preclude the original contracting parties from entering into a new contract for the insurance of the employees previously covered by the old policy, and it obviously follows that this new contract may be for the temporary continuance of the insurance for 30 days, or it may be an altogether new arrangement of different character from the old policy.

We can see no difference whether the period of 31 days of grace allowed for the payment of the premium was exercised, or whether a "special arrangement," as it was termed by Mr. Hamrick, was made for the temporary continuance of the insurance. In either event, *if the insured had died during the period while the policy was in force,* the right of the beneficiary to recover would have been exactly the same. The fair test of the obligation of the insurance company is that no payment was ever made or contract undertaken, either expressly or by implication, that would carry the group policy beyond October 27, 1924. As there were no further payments of premiums, the policy became at that time automatically canceled. The many cases cited in the argument of counsel for plaintiff do not add to the strength of their cause, as they all arise under circumstances of very different nature and are not in any sense in-

consistent with the conclusions that we have reached in the present case.

## THE PLAINTIFF'S APPEAL

The exceptions taken by plaintiff on his appeal undertake to fasten liability on the Pacific Mills on the theory that this company, in putting into effect its own insurance plan, assumed and became responsible for the contract of the Ætna Company in respect to the original group insurance policy. Three propositions are raised in these exceptions: (1) The surrender and attempted cancellation, without consent or knowledge of plaintiff, of the group policy of insurance issued by Ætna Life Insurance Company (exceptions 1, 5, and 7); (2) the effect of evidence offered to show an agreement that Pacific Mills would notify plaintiff in case of failure to pay premium, or in case of cancellation of policy (exceptions 2, 3, and 4); and (3) the effect of adoption by Pacific Mills of its own plan of insurance which replaced the original group issued by the Ætna Life Insurance Company (exception 6).

The position taken by plaintiff under the first and second propositions above stated is based upon breach of duty charged against the Pacific Mills, rather than upon the assumption of liability for the group policy issued by the insurance company. Neither the wrongful surrender of the Ætna policy, nor the failure to give notice that it had been allowed to lapse, could reinstate the original insurance, nor could these conditions make the plaintiff a beneficiary against the express provisions of the new plan of insurance adopted by Pacific Mills. An additional reason why these exceptions cannot be sustained has already been pointed out in discussion of the appeal and exceptions of the insurance company. There was no obligation on the part of the Pacific Mills to keep up the policy beyond the date of its surrender on October 27, 1924. It had the right

to continue the policy until that date and to drop it at that time. The provision for putting into effect a new plan of insurance to take the place of the original group policy could not have been required.

The position is equally untenable that plaintiff, if notified of the cancellation of the group policy, might have taken advantage of certain provisions in that policy to obtain by his own payment of premium, an equal amount of protection from the Ætna Company.

A construction of this kind cannot be placed on the insurance certificate issued in favor of plaintiff. The conditions of the certificate, under which an employee covered by the group policy may obtain an individual policy providing equal protection which he can carry for himself, are expressly limited to apply *"in case of the termination of the employment for any reason whatever."* The limitation thus indicated is made still clearer by reference to the immediately preceding paragraph of the insurance certificate, to wit:

"The Ætna Life Insurance Company's policy provides that the above-described (group) insurance may be terminated whenever said employee is discharged or leaves the service of said employer."

The benefit of these provisions is not given where the employer has failed to renew the group policy, but *only* where the group policy continues in force and effect. In such event the employee, who by reason of being discharged or leaving the employer's services has lost the benefit of the group policy, may, nevertheless, be enabled to secure other protection of equal character. This is the plain language of the stipulation. Its intent is equally plain. Many employers who take out group insurance charge their employees with either the whole or part of the cost of such insurance. A desirable feature of the group insurance under such circumstances is furnished in the privilege—which is available "in case of the termination of the employment"—of con-

verting it into other insurance without evidence of insurability.

The theory of the complaint seems to be more closely followed in plaintiff's sixth exception (third proposition in our grouping of exceptions). This states the contention that the plan of life insurance adopted by Pacific Mills assumed, took over, and replaced in every particular the original group policy issued by the Ætna Company. The first difficulty in the way of sustaining this proposition is that all liability on the group policy ended on October 27, 1924, because of the failure to keep up the payment of premiums. There are also distinct differences between the group policy and the "plan of death benefits" as substituted by Pacific Mills. The general schedule of insurance varies materially from that of the group policy, and the provision of the group policy for "permanent total disability" is not included in the Pacific Mills plan. A much wider latitude of discretion in carrying out the "death benefit" plan is also reserved by Pacific Mills, particularly the right at any time to "amend, alter, or revoke the plan in whole or in part." It may also be noted that in the announcement of the "death benefit" plan, dated October 27, 1924, employees of the Pacific Mills were notified that the new plan would become effective on that date, superseding policies of insurance canceled with the Ætna Company on the same date.

No evidence was offered by plaintiff that in any manner tends to contradict or weaken the intrinsic evidence of intent that is afforded by comparison of the provisions of the group policy and the new plan. It became therefore the duty of the Court below, in construing the Pacific Mills plan, to hold that it was not intended as a continuation of the Ætna policy, and that no liabilities of that policy had been assumed. Under this construction, it was incumbent on the trial Judge to direct a verdict for the Pacific Mills.

Notice of the adoption of the new insurance plan was sent out to J. J. Thompson, the insured employee. No

beneficiary was named by him, and upon 'his death Pacific Mills made disbursement of his insurance or "death benefit" in pursuance of the company's policy stated in the public announcement of the plan; namely, to such persons as the company deemed best entitled to have the benefit of the insurance. Funeral expenses and personal debts which the deceased employee had asked to be taken care of were paid, and a little over $1,100 was paid out to his three daughters, two of whom were unfortunately afflicted as well as dependent—the oldest daughter in the state sanatorium; the youngest in the Clinton Home for the Feeble Minded; and the other girl, who was about 18, working for Pacific Mills. A balance of $40.72 has not been disbursed, being held to be applied to debts or otherwise paid out as may be proper. There can be no doubt of the correctness of the statement of the trial Judge that payment to the wrong person, even if made in the utmost good faith and with the best humanitarian motives, could not avail as a defense against a claim brought by another who might establish a legal right to demand the payment. The plaintiff has not, however, established that legal right; and if the company's selection of beneficiaries to receive the payment were to be reviewed at all by this Court, it would have the commendation, at least, of the writer of this opinion.

In pursuance of the views above expressed, the judgment in the County Court in favor of the defendant Pacific Mills is affirmed. The judgment against the defendant Ætna Life Insurance Company, is reversed and the case is remanded to that Court for the entry of judgment in favor of said defendant.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.

MR. JUSTICE BLEASE did not participate.