269 So.2d 747 (1972)
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant,
v.
Catherine R. Best WAGONER, Appellee.
No. 71-356.
District Court of Appeal of Florida, Fourth District.
November 22, 1972.
Rehearing Denied December 27, 1972.
Joe B. Weeks, of Gurney, Gurney & Handley, Orlando, for appellant.
John W. Williams, Jr., of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, Rockledge, for appellee.
OWEN, Judge.
The beneficiary brought suit on a group life insurance policy, resulting in a judgment adverse to the insurer following a jury trial. The principal question on appeal is whether the effective date of coverage for a deceased employee is determined by the language of the policy of group insurance issued to the employer, or by the contradictory provisions of the certificate of insurance issued to the deceased employee.
Appellant issued a group life insurance policy covering the employees of Federal Electric Corporation. William Best commenced *748 his duties as an employee of Federal Electric on July 18, 1968. On that date the employer delivered to Mr. Best an individual certificate of insurance which referred to the master policy and which, among other things, contained a statement as to the insurance protection to which he was entitled. This certificate stated that the effective date of coverage under the policy was July 18, 1968, the date of his employment. The certificate also contained the following clause:
"This individual certificate is furnished in accordance with and subject to the terms of the Group policy (ies). Each policy, and the respective application of the Employer therefor, constitute each entire contract. This certificate is merely evidence of insurance provided under the policy (ies), which insurance is effective only if the Employee is eligible for insurance and becomes and remains insured in accordance with the provisions, terms and conditions of each respective policy."
The conflict between the effective date as shown on the certificate, and the effective date as provided in the policy was due to a clause in the policy which stated that the effective date of coverage was the day following the date of the insured's completion of a probationary period of one-month's service. The conflict becomes material because Mr. Best sustained injuries in the course of his employment on July 30, 1968 resulting in his death on August 7, 1968, which was after the effective date as shown by the certificate, but prior to the effective date as established by the policy.
The beneficiary's claim for payment under the policy was denied on the grounds that coverage had not become effective for Mr. Best. This suit resulted. The insurer sought, by both motion for summary judgment and motion for directed verdict, to have the court rule as a matter of law that where the certificate of insurance provides that it is subject to the terms and conditions of the group policy the latter necessarily controls as to any conflicts or inconsistencies between it and the certificate. The lower court denied both of these motions and the appellant now presents the same point to this court.
By statute, F.S. Section 627.0414, F.S.A., the group life insurer is required to issue to the policy holder (in this case the employer), for delivery to each person insured, an individual certificate containing a statement as to the insurance protection to which the insured is entitled, to whom the insurance benefits are payable and the rights and conditions set forth in F.S. Sections 627.0415, 627.0416, and 627.0417, F.S.A. In compliance with the statute, the insurer furnished to the employer a supply of the certificates, and in turn the employer delivered the certificates to the individuals insured. The certificate was 20 pages of fine print, the first page of which stated on its face the effective date. Except for the provision that the certificate was subject to the terms of the group policy, nothing in the certificate otherwise indicated that the effective date was not that which was shown on the face of the certificate.
As a practical matter, the certificate is the only document which the insured under a group life insurance policy ever sees. When the terms of the Certificate are in conflict with the provisions of the master policy a problem arises as to which should prevail. While the authorities are divided on the question, we believe the better view to be the one which holds that under group life insurance policies there is a contract between the insurer and the individual insured, that the contract consists of both the master policy and the certificate of insurance construed together, and that ambiguities or conflicts between the two must be resolved so as to provide the broadest coverage. See, Prudential Insurance Company of America v. Roberts, 5 Cir.1966, 358 F.2d 394; DaCosta v. General Guaranty Insurance Company of Florida, Fla. 1969, 226 So.2d 104; Moore v. Peninsular Life Insurance Company, Fla. *749 App. 1968, 213 So.2d 721; and 1 Appleman, Insurance Law & Practice, § 46. Under this view the coverage for William Best became effective on the date set forth in the certificate, and the court did not err in denying both the appellant's motion for summary judgment and its motion for a directed verdict.
At trial appellant sought to show that the effective date set forth in the certificate was a clerical error and that the insured could not have been misled by such because he had been told expressly that the insurance coverage would not be effective until after he had been employed for 30 days. The problem is that appellant had no direct proof of this fact but sought to establish it indirectly by proof of the employer's custom and habit of giving a detailed explanation of the insurance program to each new employee at the time of commencing his employment. The court properly excluded this testimony. It was inadmissible for the purpose of showing that the employer gave Mr. Best such an explanation of the insurance coverage at the time of commencing employment, in the absence of proof that the custom and habit was actually followed on that occasion. See Jarrard v. Associates Discount Corp., Fla. 1957, 99 So.2d 272; General Motors Acceptance Corp. v. American Liberty Insurance Co., Fla.App. 1970, 238 So.2d 450; and 29 Am.Jur.2d Evidence, § 303.
The judgment is affirmed.
CROSS, J., concurs.
DRIVER, B.J., Associate Judge, dissents with opinion.
DRIVER, B.J., Associate Judge (dissenting).
If the shoe were on the other foot and a clerk's error incorrectly stating the date of coverage had deprived the decedent of sixty-four thousand dollars in death benefits, would the courts penalize the decedent for the clerk's error as they have the insurance company in these proceedings? I think not.
Be that as it may, the scholarly majority opinion, it seems to me, rests on an infirm foundation.
The majority opinion concedes a division of authority on the issues resolved by this appeal. Prudential Insurance Company of America v. Roberts; DaCosta v. General Guaranty Insurance Company of Florida; Moore v. Peninsular Life Insurance Company; and 1 Appleman, Insurance Law & Practice, § 46, supra, are cited as authority for the majority holding. There is also an allusion to F.S. Sections 627.0414, 627.0415, 627.0416, and 627.0417, F.S.A.
A detailed analysis of these authorities does not lead me to the same conclusion reached by the majority.
The cases relied upon do not deal with a scrivener's error, but each turns upon the construction of the wording of the certificate.
The Prudential Insurance Company case involved a question of classification of employees, with the holding that the certificate controlled. The DaCosta case cites the proposition that ambiguities in insurance contracts must be decided in favor of the insured. There is no ambiguity involved in the case under consideration.
The appeal in Moore concerned itself with pleadings rather than the merits of the case. In the Moore case the court again enunciated the rule that an insurance company was bound by its certificate of insurance. The court explicitly declared, however, that it was not holding that the employee was entitled to recover, but limited its ruling to the issue of pleadings.
In the case sub judice the employee was not covered under the explicit terms of the policy. The majority permits recovery only by virtue of the clerical mistake in filling the blanks in the certificate of insurance.
*750 The better rule, it seems to me, is the well established one which permits correction of a scrivener's error. Nielsen v. Paneil, Fla.App. 1967, 202 So.2d 894; 76 C.J.S. Reformation of Instruments § 26(3); Fidelity Phenix Fire Insurance Company of New York v. Hilliard, 1913, 65 Fla. 443, 62 So. 585; Jacobs v. Parodi, 1905, 50 Fla. 541, 39 So. 833; Rosenthal v. First Nat. Fire Ins. Co. of the United States, 1917, 74 Fla. 371, 77 So. 92; Gibson v. American Insurance Company, 1941, 146 Fla. 171, 200 So. 357.
It is one thing to resolve ambiguities in an insurance policy against the company and in favor of the insured; it is quite another to compel the insurer to provide coverage contrary to the terms of the policy. Seavers v. Metropolitan Life Ins. Co., Sup.Ct. 1928, 132 Misc. 719, 230 N.Y.S. 366; Magee v. Equitable Life Assur. Soc. of United States, 1932, 62 N.D. 614, 244 N.W. 518, 85 A.L.R. 1457; Moore v. John Hancock Mutual Life Ins. Co., 398 F.2d 154, 5 Cir.1968.
Stripped of esoteric legalism, the facts are that the estate of the deceased employee is enjoying a sixty-four thousand dollar windfall, plus attorneys' fees in the amount of twelve thousand dollars.
It seems unconscionable to assess a seventy-six thousand dollar penalty for a clerical error committed by a minor factotum over whom the company had no control.
There is an additional ground which seems to me to justify reversal. Implicit in the rationale of the majority opinion is the conclusion that the employee must have relied upon the mistake made in the certificate. If in fact the employee was on notice through verbal briefing that he was not insured until thirty days after the date of employment, proof of this fact should have been submitted to the jury rather than being denied admission into evidence.
For the reasons stated, I would reverse the lower court.