BAUGH *v.* METROPOLITAN LIFE INS. CO.

(*Jackson,* April Term, 1938.)

Opinion filed June 11, 1938.

John T. Shea and W. A. Percy, both of Memphis, for appellant.

Evans, Evans & Creson and Greenfield Polk, all of Memphis, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

Suit by the beneficiary of a life insurance policy, dismissed by the chancellor, and complainant appeals.

The deceased was originally covered by a group insurance policy issued by defendant company in 1923 upon the lives of employees of the Central of Georgia Railway Company. In 1928 the insured's employment with the Railway Company ended and, pursuant to provisions of the group policy, defendant company issued to the insured an individual policy of insurance upon his life in lieu of his certificate under the group policy. The individual policy contained a one-year suicide clause. Within less than one year after the date of the individual policy, the insured killed himself. The group policy contained a provision that, except for non-payment of premiums, it should be incontestable after one year from its date.

The case was tried on a stipulation of facts and the only question is whether defendant company can rely on the suicide clause of the individual policy in view of the incontestable clause of the group policy.

Both the group policy and the certificate issued to the insured thereunder contain this provision:

"In the event of the termination of the employment for any reason whatsoever, the employee shall be entitled to have issued to him by the Metropolitan Life Insurance Company without further evidence of insurability, and upon application made to that Company within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance. in any one of the forms customarily issued by such company, term insurance excepted, in an amount equal to the amount of his protection under the group insurance policy at the time of such termination."

Pursuant to this provision and in due season upon the termination of his employment, upon the insured's written application, defendant issued to him a $2,000 endowment policy. Premiums had been duly paid by the insured on this policy up to and including the time of his death.

It seems to us that the decree of the chancellor herein must be reversed on the authority of *Silliman* v. *Insurance Company,* 131 Tenn., 303, 174 S. W., 1131, L. R. A., 1915F, 707. In that case the insured took out a five-year term policy which provided that he might, at any premium date, exchange it for any form of policy then in use at the premium fixed by his age for the policy selected at the time of the exchange. While the term policy was in force, four years after its issuance, the insured demanded an exchance of his policy for another form. The new policy was issued without any further application and the premiums of the new policy paid. The new policy contained a one-year suicide clause, dating from the time on which "this insurance begins." Within six months

after the issuance of the new policy defendant committed suicide. This court held that the two policies were in effect one and the same contract and that the insurance began, within the meaning of the suicide clause in the second policy, at the time of the issuance of the original policy. The court said (page 308):

"It seems to us quite clear that under the facts stated the new policy was but a continuation of the same insurance contract. It was based on the old application and the old medical examination, and the new terms were in strict accord with the provisions of the first policy, granting to the insured the right to make just such a selection to take the place of the original form."

The insured paid a portion of the premium for his protection under the group policy and the insurer issued to him a certificate. Under such circumstances there was a definite contractual relation between the insured employee and the insurer. *Smithart* v. *John Hancock Mutual Life Ins. Co.*, 167 Tenn., 513, 71 S. W. (2d), 1059. It seems immaterial, therefore, that the original policy in this case was a group policy instead of an individual policy as in the *Silliman Case*.

Counsel for defendant company submits that the true test of liability here is whether the individual policy is a continuance of the insurance that the insured had under the group policy, or whether the individual policy is an "independent, complete and isolated contract." This he properly says is the test laid down by this court in the *Silliman Case*. Counsel then proceeds to set out the things which he says demonstrate the individual policy here to be an independent, complete and isolated contract.

It is said that the individual policy contains a provis-

ion that "This policy and the application therefor constitute the entire contract between the parties." The further provision of the individual policy is pointed out that "This policy is issued in consideration of the application therefor, copy of which application is attached hereto and made part hereof, and of the payment for said insurance on the life of the above named insured of $66.32, etc."

It is urged that no language more apt than the foregoing could have been used to show that the individual policy was an independent, complete and isolated contract.

This argument ignores the opening sentence of the application itself, which application is made part of the individual policy. This significant sentence is "Application is hereby made for the conversion of the insurance on the life of the subscriber hereto under Group Policy No. 81838 G., (Certificate No. 61) in accordance with the (Privilege of Continuance) provision contained in said Group Policy issued to Central of Ga. Ry."

The application, therefore, shows on its face that the policy is to be issued in accordance with the privilege of continuance contained in the group policy. By the application the privilege was exercised. The group policy was continued. The individual policy is but the evidence of the exercise of the privilege of continuance contained in the group policy. The application upon which the individual policy was issued not only contained the language just referred to, but the application provided that the certificate issued to the insured under the group policy should be attached to such application. So, if defendant company issued the new policy upon the application, the policy was issued upon an application which showed

the new insurance issued as a continuance of the old insurance and upon an application to which was attached the certificate witnessing the old insurance.

The application contains certain matter with reference to the insured's age, the beneficiary named, the payment of premiums, authority of the company's agent, etc. As counsel for defendant said in his brief, such provisions in the application are those found in any application for a life insurance policy, which application is embodied in the policy when issued and becomes a part of the policy. The application signed by the insured, therefore, did not stamp the new policy as an independent, complete and isolated contract. The insured's privilege of continuance was to have an individual policy in any of the forms customarily issued by defendant company except term insurance. Any form of policy customarily issued by the insurer contains an application like the one here in question.

Referring more particularly to the suicide clause contained in the individual policy, it provides: "If the insured within one year from the date of issue hereof die by his own hand or act, whether sane or insane, the liability of the company hereunder shall be limited to an amount equal to the premiums which have been received, without interest."

This paragraph of the policy immediately follows that paragraph heretofore quoted providing that "this policy and the application therefor constitute the entire contract between the parties, etc., etc."

■■ The limitation in the suicide clause is "one year from the date of the issue hereof." Hereof means of this. (Webster's International Dictionary.) To what does hereof refer? This what? Naturally the reference

is to the contract of insurance. The contract of insurance is evidenced by the individual policy, the application showing that the individual policy was issued in continuance of the certificate under the group policy, and the certificate itself. The certificate bears a date in 1923. Why, then, should the date of issue of this be regarded as 1928, the date of the individual policy, rather than 1923, the date of the certificate? Under familiar rules the ambiguity must be resolved against defendant insurance company.

We cannot treat the individual contract as an independent, complete and isolated contract for another reason. The insured was seventy years of age when this individual policy was issued to him and the record shows that a physical examination was made which disclosed him to be in a very precarious physical condition. In such condition the defendant company would not have insured him had he been thirty instead of seventy years old unless it had been compelled to do so by the obligation it assumed to the insured under the group policy. Under these circumstances an observation of the Supreme Court of the United States in a somewhat similar case seems pertinent. Speaking of a policy issued in lieu of an earlier one, the court said:

"It was issued not as the result of any new negotiation or agreement but in discharge of pre-existing obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a

suit in equity for specific performance." *Aetna Life Ins. Co.* v. *Dunken,* 266 U. S., 389, 45 S. Ct., 129, 133, 69 L. Ed., 342.

It may be noted that the Indiana Court of Appeals has followed *Silliman* v. *Insurance Company, supra,* in the case of *Western & Southern Life Insurance Company* v. *Shelby,* 101 Ind. App., 1, 194 N. E., 197.

We see no difference between this case and *Silliman* v. *Insurance Company, supra,* except that a written application was here made for the individual policy and the converted policy was issued upon the original application in the earlier case. The application in this case, however, shows, as heretofore noted, that it was not for new insurance but for a continuance of the old insurance.

The decree of the chancellor will be reversed and a decree entered here for the complainant.