Dixie Reeves BUTTS, Plaintiff,

v.

The UNION CENTRAL LIFE INSUR-
ANCE COMPANY, Defendant.

Dixie Reeves BUTTS, Plaintiff,

v.

NEW ENGLAND MUTUAL LIFE IN-
SURANCE COMPANY, Defendant.

Civ. Nos. 4220, 4221.

United States District Court
M. D. Tennessee,
Nashville Division.

Feb. 27, 1967.

Carmack Cochran, Martin & Cochran, Nashville, Tenn., for Butts.

Frank C. Gorrell and T. G. Pappas, of Bass, Berry & Sims, Nashville, Tenn., for defendant Union Cent. Life Ins. Co.

Charles C. Trabue, Jr., and Russell H. Hippe, Jr., of Trabue, Minick, Sturdivant & Harbison, Nashville, Tenn., for defendant New England Mut. Life Ins. Co.

## MEMORANDUM

WILLIAM E. MILLER, Chief Judge.

These actions are before the Court on the motions of the defendants for summary judgments.

These suits against the New England Mutual Life Insurance Company (Civil Action 4221) and The Union Central Life Insurance Company (Civil Action 4220) have been brought by the plaintiff who is the beneficiary of certain insurance policies issued by the defendants on the life of plaintiff's late husband, Macon Cooper Butts. The policies in question contained provisions for "double indemnity" coverage or additional benefits in the case of death from bodily injury effected solely through external, violent and accidental means. Plaintiff's husband died as a result of injuries sustained in an airplane crash and the defendants have denied liability and have moved for summary judgments on the theory that the plaintiff is prevented from recovering because of certain exclusionary "Risks not Assumed" provisions in the policies in question which apply to the piloting of aircraft.

The defendants assert that there is no dispute as to any material facts in these cases and that plaintiff's deceased husband was piloting the four-passenger private plane whose crash resulted in his death. They rely upon the following provisions contained in the policies in their motion for summary judgment.

The policy issued by The Union Central Life Insurance Company provided that no benefit for death occurring through accidental means would be paid in the event that death results directly or indirectly from:

\* \* \* Travel or flight in any kind of aircraft while the insured is a pilot, officer or member of the crew of such aircraft or while the insured is in any aircraft operated for aviation training.

Two of the policies (Nos. 1,614,937 and 1,837,665) issued by the New England Mutual Life Insurance Company contained the following provisions:

\* \* \* The Company does not assume the risk and shall in no event incur any liability under this Agreement, if death, even by accidental means, shall result directly or indirectly, wholly or partly, from any of the following causes: \* \* \* flight in or descent from or with any type of aircraft \* \* \* (c) of which the Insured is a pilot, officer or a member of the crew. \* \* \*

A third policy (No. 1,410,435) issued by the New England Company excluded liability if death were caused by:

\* \* \* Flight in or descent from any kind of aircraft except as a fare-paying passenger on a regularly scheduled passenger flight of a licensed common carrier. \* \* \*

In opposition to defendants' motions, plaintiff makes two principal contentions. First, the facts are said to be in dispute as to whether the insured was actually piloting the plane at the time of the crash; and, second, the policy provisions quoted above are said to be ambiguous, especially when considered in the light of the total circumstances surrounding their issuance.

The undisputed facts relating to the circumstances of the insured's death indicate that he was the owner of a private plane, and immediately before his death, the insured, with three persons as

passengers, was piloting this plane from Nashville to East St. Louis, Illinois, where the plane crashed. The plane was a four-seat plane with dual controls. The insured occupied one of the forward, or pilots seats and the other forward seat was occupied by one Virgil Holmes who was not able to fly a plane and who also perished as a result of the accident. The rear seats were occupied by Burton Marshall, Sr. and his son. Marshall, Sr. survived the crash and has stated by affidavit that the insured was piloting the plane at the time of the crash. Plaintiff, however, while admitting that the insured was piloting the plane prior to the crash, seeks to challenge Marshall's statements by proof that Marshall has previously testified in other proceedings that he was or is unable to remember the circumstances of the crash itself. From this, plaintiff contends that there is a dispute of fact as to whether the insured was actually piloting the plane at the time of the accident. The Court, however, must consider that it is undisputed that the insured was, in fact, the pilot of his plane when the fatal accident occurred. The facts show that he owned the plane, that he started out on the fatal trip flying the plane, and that no one else was in the plane with access to the controls who was capable of flying the plane. The fact that the only direct witness could not recall who was piloting the aircraft (assuming such to be a fact) does not require a trial on the merits. The conclusion that the aircraft was actually piloted by the insured appears from facts not disputed directly or otherwise.

Since the Court finds that the insured was the pilot of a private plane at the time of his fatal accident, it remains to determine whether such an accidental death is within the exclusionary provisions of the policies or whether the policy provisions are, as the plaintiff contends, ambiguous.

■■■ With respect to the policies issued by the New England Mutual Company, plaintiff's basic position is that the differences in the two policy provisions set out previously in this opinion,

constitute either a waiver by defendant of the exclusionary clauses or an ambiguity which is to be construed against the defendant. With respect to the provisions contained in policies, number 1,-614,947 and 1,837,665, plaintiff contends that the words, "pilot, officer or a member of the crew," limit the exclusion to commercial or military aircraft which require a crew. In support of this contention, the case of Ezell v. Atlantic Life Ins. Co., 119 F.Supp. 614 (M.D.Tenn. 1953), is cited. In that case, a motion by the insurer to dismiss was denied where it appeared that the riders on an insurance policy were similar to those contained in policies, number 1,614,947 and 1,837,665, while the double indemnity rider was similar to that contained in policy number 1,410,435. The Court felt that the exclusion which mentioned co-pilot and crew members might be considered less inclusive and applicable only to planes which required a crew. Plaintiff thus contends that the policy provisions contained in policies 1,614,947 and 1,837,665 do not include private aircraft. The better view, however, would seem to be that expressed in the case of Scarboro v. Pilot Life Insurance Company, 242 N.C. 444, 88 S.E.2d 133, 54 A.L.R. 2d 407 (1955), which has been called to the attention of the Court by the defendant. In that case it was stated:

> If the Aviation Exclusion Rider had used the words, "If the Insured is a pilot, officer, *and* other member of the crew," it might be that the word "other" would restrict the meaning of the word "pilot," so as to mean a pilot who is a member of a crew (citations omitted). However, the Rider uses the words "or other member of the crew." This creates no ambiguity. The risk is not assumed under the Rider if the insured is: (1) a pilot, (2) an officer, (3) or other member of the crew, or (4) has any duties whatsoever aboard such aircraft while in flight.

The Court, therefore, considers that the insured's piloting of a private plane came within the exclusionary provisions of all three policies issued by the New England

Mutual Company. The Court is not persuaded that the differences between the policies may conceivably have amounted to a waiver on the part of the defendant or admission that private aircraft were covered in some but not all of the policies. The policies of the New England Mutual Company are free from ambiguities in the aspect now considered and the motion for summary judgment on behalf of that defendant in Civil Action 4221 must be granted.

■■ The action against The Union Central Life Insurance Company is slightly different but the holding must be the same. As stated above, the provision referring to a "crew" was again present but the Court is of the opinion that it must also be said to include the piloting of a private airplane. Plaintiff's other principal contention with respect to the policy issued by the Union Central Company is that the execution or completion by the insured at the request of the insurer of a form entitled, "Pilots and Crew Members Aviation Agreement," constituted an exception made on the part of the defendant from the exclusionary provision of the policy. The amendment in question clearly appears to be an amendment to the application for life insurance. It consists of several questions concerning aviation activities which the insured was required to answer. The Court can see no possibility of interpreting the amendment other than as furnishing additional information to the insurer. There is no logical basis for the contention that the furnishing of such information by the insured constituted a waiver on the part of the insurer or modified the policy exclusions.

For the foregoing reasons, the Court is of the opinion that the controlling facts in these actions are undisputed and the result must be that the motions for summary judgment on the part of The Union Central Life Insurance Company and the New England Mutual Life Insurance Company should be granted.

An appropriate form of order will be submitted accordingly.